**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Civil Action Number:

ANDRES GOMEZ,

      Plaintiff,

vs.

DARDEN RESTAURANTS INC.,
d/b/a OLIVE GARDEN

      Defendant

---

## COMPLAINT

---

COMES NOW Plaintiff Andres Gomez, by and through his undersigned counsel, and hereby files this Complaint and sues Defendant Darden Restaurants Inc. for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and pursuant to the Electronic Communications Privacy Act 18 U.S.C. §2510 et. al., and the tort of trespass, and alleges as follows:

### INTRODUCTORY STATEMENT

1.    Plaintiff Andres Gomez brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant Darden Restaurants Inc.'s website (which is an extension of its Olive Garden restaurants)

throughout the United States of America, where the groundbreaking "American with Disabilities Act" has been the law of the land since 1992.

2.      Title III of the ADA has been extended to apply to websites. Specifically, the Honorable Bryan F. Foster held on March 3rd, 2016 that the ADA applied to websites where the plaintiff had demonstrated "he was denied full and equal enjoyment of the goods, services, privileges, and accommodations offered by defendant [via its website] because of his disability."[1]

3.      Companies operating on the internet twenty years (20) after consumers started using the internet to better their lives have to make decisions on whether to be inclusive, or to exclude visually-impaired people.[2]

4.      When the operators of a website do not take steps necessary to notice people of their website's limitations or to provide programming that works (interfaces) with universal screens readers[3], they are not only marginalizing the visually impaired community, but they are actively excluding them from their business, which in fact segregates the disabled into being non-participants, ie: second-class citizens.

5.      When websites are not fully accessible to all, it's essentially a bad business practice, a detriment to their stakeholders, the visually-impaired, and society.

6.      For visually-impaired individuals (whose population is expected to double by 2050), it is essential that they are not excluded from society and segregated in the area

---

[1] *Davis v. Bmi/Bnd Travelware,* 2016 Cal. Super. LEXIS 217 (2016).

[2] Introduction of the Netscape Browser for consumers in 1996
[3] A "screen reader" is a software application that enables people with severe visual impairments to use a computer. Screen readers work closely with the computer's Operating System (OS) to provide information about icons, menus, dialogue boxes, files and folders.

of web commerce.

7.      This case arises out of the fact that Defendant Darden Restaurants Inc. has operated its business in a manner and way that completely excludes individuals with disabilities who are visually impaired from enjoying and accessing the Defendant's website www.olivegarden.com.

8.      Defendant Darden Restaurants Inc. (also referenced as "Defendant") owns and operates places of public accommodation which are a chain of family friendly, economical casual style restaurants under the brand name "Olive Garden." Olive Garden restaurants serve Italian-American cuisine including pasta dishes, steaks, and salads. Olive Garden's advertising centers its menu selections around its signature breadsticks. Heretofore, referenced as "Olive Garden cuisine."

9.      The Defendant offers an adjunct website www.olivegarden.com ("website") which is directly connected to its Olive Garden restaurants since the website provides a site locator to the Defendant's Olive Garden restaurant locations (places of public accommodation). Thus, www.olivegarden.com ("website") has a true nexus to the Defendant's Olive Garden restaurants.

10.     This complaint seeks declaratory and injunctive relief to correct the Defendant's policies and practices, to include measures necessary to ensure compliance with federal law, to include monitoring of such measures, and to update and remove accessibility barriers on the Defendant's www.olivegarden.com website so that the Plaintiff (and other individuals who are visually impaired and who cannot access and comprehend the websites that operate therein without the aid of assistive technology) will be able to independently and privately use the Defendant's www.olivegarden.com

website. This complaint also seeks compensatory damages to compensate the Plaintiff for having been subjected to unlawful discrimination.

## <u>JURISDICTION & VENUE</u>

11.     This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and the Electronic Communications Privacy Act 18 U.S.C. §2510 et. al. and supplemental jurisdiction over the related state law claim pursuant to 28 U.S.C. §1367.

12.     This is also an action for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property (his personal computer). Remedies provided under common law for trespass are not exclusive, and may be sought connection with suits brought under the ADA.

13.     This is also an action for declaratory and injunctive relief to prevent discrimination which includes equal access to internet website for services to order Olive Garden merchandise online.

14.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting, business within the within the jurisdiction of this court by virtue of the fact its website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District. Further, several of the Defendant's sales establishments are located in the district.   In addition, the Defendant is authorized to conduct business within the state of Florida as a domestic for profit corporation.

15.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

### Andres Gomez

16.     Plaintiff Andres Gomez (also referenced as "Plaintiff") is a resident of the state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA and the Rehabilitation Act.

17.     Plaintiff Andres Gomez is legally blind and substantially limited in performing one or more major life activities, including not being able to accurately visualize his world, adequately traverse obstacles, or walk without assistance. Therefore, Andres Gomez is a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h).

18.     Plaintiff Gomez cannot use the computer without the assistance of screen reader software.

### Darden Restaurants Inc.

19.     Defendant Darden Restaurants Inc. (also referenced as Defendant) is the owner and operator and franchisor of a chain of casual dining restaurants under the brand name "Olive Garden." The Defendant owns and/or operates eight hundred forty Olive Garden restaurants around the world.

20.     Defendant Darden Restaurants Inc. was formally a subsidiary of General Mills, Inc., an American multinational manufacture.   However in 1995, Darden Restaurants Inc. was spun off into a NYSE publicly traded company and is currently listed among the S&P 500, and has over 200,000 employees, over 1,500 restaurant

locations, and reported revenue of $6.9 billion dollars in its FYE May, 2016 reporting cycle.

21.     Defendant Darden Restaurants, Inc. is an American multi-brand restaurant operator headquartered in Orlando, Florida. The firm owns several casual dining restaurant chains such as Olive Garden, Longhorn Steakhouse, Bahama Breeze, Seasons 52, Eddie V's Prime Seafood, The Capital Grille, and Yard House. The Olive Garden segment of Darden Restaurants, Inc. has 840 restaurant locations, which makes Olive Garden the largest chain of Italian-themed restaurants in the United States.

## FACTS

22.     The Defendant is defined as a "public accommodation" because it is an entity which owns and operates, and is a franchisor a chain of restaurants under the brand name "Olive Garden," each of which is a "Place of Public Accommodation" which is defined as "[A] restaurant, bar, or other establishment serving food or drink," 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104(2). Each of the Defendant's Olive Garden restaurants are a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(B) and 28 C.F.R. Part 36. The Defendant's Olive Garden restaurant chains are also referenced throughout as "place(s) of public accommodation," or as "Olive Garden restaurants."

23.     One of the functions of the Defendant's website www.olivegarden.com ("website") is to provide the general public information on the various locations of the Defendant's Olive Garden restaurants throughout the United States and within the state of Florida as well as to view the menu selections offered at Defendant's places of public accommodation.

24.      Since the Defendant's website allows the general public the ability to locate one of the many Olive Garden restaurants, the website is an extension of the physical Olive Garden restaurants. Hence there is a direct nexus between the www.olivegarden.com website and the Defendant's Olive Garden restaurants, hence the website is characterized as a place of public accommodation; 42 U.S.C. § 12181(7)(B).

25.      The website also allows the general public access to general information on the menu selections, site locator, and order for ToGo pickup or for catering pickup which provides delivery service for catering orders over $100. As such, the website is a food service establishment, which is a public accommodation pursuant to 42 U.S.C. § 12181(7)(B) and must comply with the ADA.

26.      Further, the Defendant's website services the Olive Garden restaurants by selling Olive Garden gift cards online.  As such, the website is a sales establishment, which is a public accommodation pursuant to 42 U.S.C. § 12181(7)(E) .

27.      Because the website meets the definition of a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(B) and 42 U.S.C. § 12181(7)(E), the website must comply with the ADA. This means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the general public.  As such, the Defendant has subjected itself and the website it has created and maintains, to the Americans with Disabilities Act ("ADA").[4]

---

[4] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

28.     Plaintiff Andres Gomez is a customer who is interested in the opportunity to preview Olive Garden restaurant's food menu, learn about the menu item's nutritional and allergen information, locate Olive Garden restaurants, and order online for pick up or delivery (through the catering delivery options) www.olivegarden.com website.

29.     Plaintiff Andres Gomez frequently utilizes the internet. In order to comprehend   information available on the internet and access/comprehend websites, Plaintiff Andres Gomez uses commercially available screen reader software to interface with the various websites.

30.     In order to comprehend the Defendant's website and to become informed of the Defendant's Olive Garden cuisine (which other members of the general public may order online), Plaintiff Andres Gomez must use screen reader software.

31.     Plaintiff Andres Gomez is interested in eating at Italian fare restaurants and purchasing Italian style food.  Plaintiff Juan Carlos Gil had heard about Olive Garden restaurant in Aventura, Florida and decided to go online to learn about Olive Garden Restaurants and Olive Garden cuisine/menu selection through its website, www.olivegarden.com.

32.     During the month of June 2016, the Plaintiff attempted on several occasions to utilize the Defendant's website. The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which is the most popular screen reader software utilized worldwide as it allows individuals who are visually impaired to comprehend information available on the internet and access websites.

8

33.     However, the Defendant's website did not integrate with Plaintiff's screen reader software, nor was there any function within Defendant's website to permit access for visually impaired through other means.

34.     The Defendant's website contains access barriers that prevent free and full use by visually impaired individuals using keyboards and screen reading software. These barriers are pervasive and include, but are not limited to: the lack of alt-text on graphics, inaccessible forms, the lack of adequate prompting and labeling; the denial of keyboard access; and the requirement that transactions be performed solely with a mouse.

35.     The Defendant's website also lacks prompting information and accommodations necessary to allow visually impaired individuals who use screen reader software to locate and accurately fill-out online forms to purchase Olive Garden ToGo Pick up, Catering Pick up and for purchasing gift cards. On a website such as www.olivegarden.com, fields that specify the number of items desired, and fields used to fill-out personal information, including address and credit card information. Due to the lack of adequate labeling, visually impaired customers cannot easily order online or purchase Olive Garden gift cards, nor can they enter their personal identification and financial information with confidence and security.

36.     The Plaintiff attempted to locate any type of *Accessibility Notice*, any link[5], or any information relating to the website's future accessibility plans or information

---

[5] **hyperlink**, or simply a link, is a reference to data that the reader can directly follow either by clicking, tapping, or hovering. A **hyperlink** points to a whole document or to a specific element within a document.

regarding contacting the Defendant to alert the Defendant to the inaccessibility of its website www.olivegarden.com[6].

37.     The fact that Plaintiff Gomez could not interface with the Defendant's www.olivegarden.com website left him feeling excluded, as he is/was unable to participate in the shopping experience online at the www.olivegarden.com website as experienced by the general public, 26 years after the Title III of the ADA was enacted and which promised to remove such barriers.

38.     Plaintiff Andres Gomez continues to desire to patronize the www.olivegarden.com website, but is unable to do so, as he is unable to comprehend the website due to his vision impairment because the website has not been designed to accommodate low vision people.  Thus, the Plaintiff and others with vision impairments will continue to suffer irreparable injury from the Defendant's intentional acts, policies, and practices set forth herein unless enjoined by this Court.

39.     The Defendant's website did\does not offer an adequate system to permit a disabled person with a visual impairment (who requires screen reader software) to comprehend its website in an effective manner.

40.     The Defendant's website is\was not designed and programmed to interface with commercially available screen reader software for disabled individuals who are visually impaired in the same manner as the website is offered to the general public.

---

[6] Other online retailers have taken steps  to notice and inform disabled users of their website programming plans and have direct email / toll free numbers to enable contact with the retailer e.g.
http://www.starbucks.com/about-us/company-information/online-policies/web-accessibility
http://www.tiffany.com/Service/Accessibility.aspx?isMenu=1&
http://www.potbelly.com/Company/Accessibility.aspx
https://www.dennys.com/accessibility/

41.     The Defendant's website is\was so poorly functional for visually impaired individuals who require screen reader software, that any utilization of the website contains barriers that prevent full and equal use (of the website) by individuals with disabilities who are visually impaired.

42.     On information and belief, the Defendant has not initiated a Web Accessibility Policy to insure full and equal use of the www.olivegarden.com website by individuals with disabilities.

43.     On information and belief, the Defendant has not instituted a Web Accessibility Committee to insure full and equal use of its website by individuals with disabilities.

44.     On information and belief, the Defendant has not designated an employee as a Web Accessibility Coordinator to insure full and equal use of its website by individuals with disabilities.

45.     On information and belief, the Defendant has not instituted a Web Accessibility User Accessibility Testing Group to insure full and equal use of its website by individuals with disabilities.

46.     On information and belief, the Defendant has not instituted a User Accessibility Testing Group to insure full and equal use of its website by individuals with disabilities.

47.     On information and belief, the Defendant has not instituted a Bug Fix Priority Policy.

48.     On information and belief, the Defendant has not instituted an Automated Web Accessibility Testing program.

49.     On information and belief, the Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

50.     On information and belief, the Defendant has not created and instituted on its website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have its website, Applications, and Digital Assets accessible to the visually impaired community.

51.     On information and belief, the Defendant's website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[7].

52.     On information and belief, the Defendant does not have a Web Accessibility Policy.

53.     On information and belief, the Defendant has not disclosed to the public any intended 1) audits, 2) changes, or 3) lawsuits to correct the inaccessibility of their website vis-a-vis disabled individuals who are visually impaired who want the safety and privacy of purchasing food or gift cards online from their homes like other Americans.

54.     Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages and accommodations provided by and through its website www.olivegarden.com.

55.     Under the ADA, all places of public accommodation must ensure that the disabled individuals enjoy full and equal enjoyment of its goods and services by making reasonable modifications to its services and sales policies and procedures.

---

[7] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

56.     Public Accommodations that use the Internet for communications regarding their programs, goods or services, must offer those communications through adequate accessible means as well.

57.     For many individuals with disabilities who are limited in their ability to travel outside their home, the internet is one of the few available means of access to the goods and services in our society with safety and in dealing with terms of their disability.

58.     The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet websites, such as the Defendant's website, where they have a direct connection.

59.     On information and belief, the Defendant is aware of these common access barriers within its website which prevent individuals with disabilities who are visually impaired from the means to comprehend its website to become informed of its Olive Garden cuisine at its restaurant locations, and available for purchase online through the ToGo Pickup option, and to purchase gift cards online.

60.     On information and belief, the Defendant is aware of need to provide full access to all visitors of its www.olivegarden.com website.[8]

61.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

62.     Such barriers result in punishment and isolation of blind and low vision from the rest of society.

---

[8] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g. (www.internetretailer.com/2016/04/01/web-accessibility-what-e-retailers-need-know) (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance)

63.     Thus, the Defendant has refused to make its website accessible to individuals with disabilities who are visually impaired.

64.     According to Statistic Brain Research Institute[9], in 2014, online sales in the United States exceeded $304 Billion U.S. Dollars. On average, 87% of Americans that have browsed online stores such as www.olivegarden.com and have made an internet purchase, while 57% of Americans that have browsed online stores have made a purchase multiple times.

65.     According to the National Federation for the Blind[10], there are over seven million Americans with visual disabilities, and there are over half a million people with visual disabilities living within the state of Florida.

66.     The Defendant has failed to provide any mechanism by which to adequately serve visually impaired individuals such as the Plaintiff. The Defendant is operating in violation of Plaintiff Andres Gomez's rights as protected by the ADA and is entitled to injunctive relief. 42 U.S.C. §12188.

67.     Plaintiff Andres Gomez has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment and injunctive relief is their only means to secure adequate redress from the Defendant's unlawful and discriminatory practices.

68.     Plaintiff Andres Gomez (and other individuals with visual impairments) will continue to suffer irreparable injury from Defendant's intentional acts, policies, and practices set forth herein unless enjoined by the court.

---

[9] US Commerce Department, Forrester Research date: October 9, 2014, See
http://www.statisticbrain.com/total-online-sales/
[10] Statistics for 2012, see http://www.NFB.org/blindness-statistics

69.     Notice to the Defendant is not required as a result of the Defendant's failure to cure the violations. Enforcement of the Plaintiff's rights is right and just pursuant to 28 U.S.C. §§s 2201, 2202.

70.     The Plaintiff has retained the law offices of Scott R. Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

**<u>Privacy Violations</u>**

71.     Plaintiff Andres Gomez utilizes his personal computer to access websites such as the Defendant's www.olivegarden.com website.     Plaintiff Gomez uses his personal computer as a method of conveyance of his personal information. As such, Plaintiff Gomez stores his personal information and retains his browsing history on his personal computer.

72.     Throughout the www.olivegarden.com website, the Defendant has programed cookies to collect personal information on the website's users (such as the Plaintiff).

73.     The www.olivegarden.com website's *Legal Notices* section delineates how the Defendant captures the user's data and profiles the user in order to develop products, services, and marketing programs based upon the captured data from the user's visit to the website and/or purchase of merchandise from the website.

74.     The Defendant's *Legal Notices* section informs the website user that any individual who accesses the website and commences to shop on that website is subject to having his/her personal information conveyed to third parties. According to the Defendant's website, the information collected is used for, administering the Online

15

Ordering Program, promotion of Olive Garden's restaurant events and events from Defendant's affiliated companies, for analysis and research to develop more targeted marketing using the user's information and browsing history, and to analyze behavior, trends, and communication in order to enhance the Defendant's business through advertising and marketing.  In addition, Defendant discloses that the user's information and browsing data collected is  conveyed to the Defendant's related affiliated companies, service providers (without so naming the service providers) and other third parties (without so naming the third parties), to law enforcement officials (if so required to be transmitted by said law enforcement), marketing agencies, research agencies, and third party data processers, and a third party email service (ostensibly for use in conducting marketing research).

75.    The *Limitation of Liability* section of the website also informs the user that the information which Defendant captures may not be fully secure, and that the Defendant accepts no responsibility for the security of that information.

76.    The *Privacy* section of the website describes how Defendant collects the user's information and browser history.  Based upon the review of Defendant's *Privacy Policy*, it is clear that, when a user accesses Defendant's website, the Defendant mines the user's computer. It is clear that the Defendant has used browser cookies to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history[11].

77.    Browser cookies are small pieces of data sent from a website and stored in a user's web browser while the user is browsing. They can be used to remember arbitrary

---

[11] As delineated in the "Cookies" section of the Defendant's Privacy Policy, http://www.nexteraenergy.com/privacy_policy.shtml

pieces of information that the user previously entered into form fields such as names, passwords, and credit card numbers.

78.     In general, cookies are categorized by the length of time for which they are placed on a user's device, and the party who places the cookie on the user's device:

79.     Cookie Classifications by Time

   a.  "Session cookies" are placed on the user's computer for the time period in which the user is "reading and navigating the website" that placed the cookie. Web browsers normally delete session cookies when the user closes the browser.

   b.  "Persistent cookies" are designed to survive past one browser session of a user. The lifespan of a persistent cookie is set by the person who creates the cookie. As a result, a "persistent cookie" could stay on a user's device for years. Persistent cookies can be used to track users' actions on the Internet, and are also sometimes referred to as "tracking cookies."

80.     Cookie Classifications by Party

   a.  "First-party cookies" are those set on a user's device by the website the user is visiting at the time the cookie is set on the device. For example, when a user visits www.olivegarden.com, the website will set a collection of Defendant's "first party cookies" on the user's device.

   b.  "Third-party cookies" are set on a user's device by a website other than the site the user is visiting at the time the cookie is set. For example, the same user who visits www.olivegarden.com will also

have cookies placed on her device by third-party websites, including advertising companies which track user behavior. Third-party cookies typically work in furtherance of targeted advertising.

81.    As computer programming became more advanced and the use of "cookies" was further developed, new businesses were created to use sophisticated database systems based on numerous cookies that could track activities and communications for the purposes of selling advertising targeted specifically to an individual person. With these advances, website owners, the digital-age equivalent of newspaper publishers, could sell advertising space to these new businesses to place other companies' ads, customized based on each individual user's Internet browsing history.

82.    Defendant collects user information through click-stream data, HTTP protocol elements, search terms and HTTP cookies. As such, Defendant's website can automatically "know" the type of computer that may be used, what pages in the site have been visited, where the user linked from, where the user links to when the leave the site, as well as identifying the websites the user had previously visited by accessing the user's web browser history.

83.    Sighted users are given notice of Defendant's actions through the *Legal Notices* and *Privacy* sections on the website, where the Defendant has provided a cursory explanation as to its use of software to circumvent privacy and security controls of consumers who (like Plaintiff Gomez) had configured their browsers to prevent third-party advertisers from monitoring their online activities

84. On the other hand, visually impaired individuals (such as Plaintiff Gomez) are unable to comprehend the *Legal Notices* and *Privacy* sections on the website because of the inaccessibility of the www.olivegarden.com website. Plaintiff Gomez therefore has had no notice, and therefore no knowledge, of Defendant's purposeful actions in collecting user data.

85. The Plaintiff is unable to comprehend the Defendant's *Legal Notices* and *Privacy* sections because of the inaccessibility of the website. The Plaintiff has/had no choice (and therefore no knowledge) of the Defendant's policy toward collection of the website user's browsing history and analytics placed on the user's computer.

86. As such, through its www.olivegarden.com website, the Defendant has committed a trespass against the Plaintiff since the website uses software analytics to farm the Plaintiff's personal data and the personal browsing history of the Plaintiff as stored on the Plaintiff's computer.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

87. Plaintiff Andres Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-70 above.

88. The Department of Justice has long taken the position that both State and local government websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their

sites are fully accessible to individuals with disabilities[12].

89.     As a result of the inaccessibility of the Defendant's website and by the barriers to access in its website (when removal of those barriers is readily achievable), the Defendant has denied individuals with disabilities who are visually impaired full and equal enjoyment of the information and services that the Defendant has made available to the general public on its website www.olivegarden.com, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

90.     Pursuant to 42 U.S.C. §12181(7)(E) (as to nexus to restaurants and online ToGo ordering and catering) and 42 U.S.C. §12181(7)(E) (as to gift cards), the www.olivegarden.com website is a *place of public accommodation* under the ADA because it provides the general public with the ability to purchase Olive Garden cuisine online and have those items available for pick up or if a catering order, delivered to one's home. Further, the www.olivegarden.com website also serves to augment the Defendant's Olive Garden restaurants by providing the general public information on the various locations of Olive Garden restaurants and to educate the general public as to the menu selection at Olive Garden restaurants.

91.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

---

[12] See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

92.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

93.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

94.     As such, the Defendant's website must be in compliance with the ADA. However, the Defendant's website is\was not in compliance with the ADA.  Plaintiff Andres Gomez has suffered an injury in fact because of the website's (and Defendant's) non-compliance with the ADA.

95.     Types of website programming errors include (but are not limited to) *Programming Error Types* ("PETs"), which are easily identifiable and correctable, and *Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible.

96.     A sampling review of just part of the Defendant's website revealed that the website is not functional for users who are visually impaired.  The Defendant's website contains several types of PETs (easily identifiable and correctable), which occur throughout the website such as:

1)  The language of the document is not identified,
2)  Image alternative text is not present, and
3)  A form control does not have a corresponding label.

97.     Further, the Defendant's website contains various types of PATs (prone to making the website inaccessible), which occur throughout the website, such as:

1)  Alternative text is likely insufficient or contains extraneous information,
2)  An event handler is present that may not be accessible,
3)  A heading level is skipped,
4)  Flash content is present,
5)  Adjacent links go to the same URL,
6)  A link contains no text, and
7)  Alternative text is likely insufficient or contains extraneous information.

98.     More violations may be present on other pages of the website, and they will be determined and proven through the discovery process.

99.     Further, the Defendant's website did\does not offer include the universal symbol for the disabled[13] which would permit disabled individuals to access the website's accessibility information and accessibility facts.

100.    Therefore, due to the Plaintiff's disability and the Defendant's failure to have its website adequately accessible to individuals with visual impairments, the Plaintiff was unable to comprehend the Defendant's website.

---

[13] , or HTML "Accessibility" link for those individuals who are visually impaired

101.    There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include (but not limited to) adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make the Defendant's www.olivegarden.com website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

102.    The Defendant has violated the ADA (and continues to violate the ADA) by denying access to www.olivegarden.com to individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access internet websites.    These violations within the www.olivegarden.com website are ongoing.

103.    As a result of the Defendant's inadequate development and administration of www.olivegarden.com, Plaintiff Andres Gomez is entitled to injunctive relief pursuant to 42 U.S.C. §12133 to remedy the discrimination.

104.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Andres Gomez injunctive relief; including an order to:

    a) Require Defendant Darden Restaurants Inc. to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of www.olivegarden.com to a statement as to Darden Restaurants Inc.'s policy to ensure persons with disabilities have full and

equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its website, and

b) Require Defendant Darden Restaurants Inc. to take the necessary steps to make its www.olivegarden.com website readily accessible to and usable by accessible visually impaired users, and during that time period prior to the www.olivegarden.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the www.olivegarden.com website, until such time that the requisite modifications are made.

105.    Plaintiff Andres Gomez has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff Andres Gomez is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Darden Restaurants Inc.

## COUNT II – VIOLATIONS OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT

106.    Plaintiff Andres Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1–86 above.

107.    The Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510, ("ECPA") regulates wire and electronic communications interception and interception of oral communications. Within the meaning of 18 U.S.C. § 2511(1), it is unlawful for a person to: intentionally intercept, endeavor to intercept, or procure . . . any other person to intercept or endeavor to intercept any wire, oral, or electronic communication.

108.    The Defendant violated 18 U.S.C.§2511 by intentionally acquiring and/or intercepting (through the www.olivegarden.com website), by device or otherwise,

Plaintiff Gomez's electronic communications, *without knowledge*, consent, or authorization.

109.    The Defendant did not obtain any permission[14] from Plaintiff to install any electronic software on his computer.

110.    The Defendant did not obtain any permission[15] from Plaintiff to install any analytic devices on his computer.

111.    The contents of data transmissions from and to Plaintiff's personal computer constitutes "electronic communications" within the meaning of 18 U.S.C. §2510.

112.    Plaintiff Andres Gomez is a "person whose . . . electronic communication is intercepted . . . or intentionally used in violation of this chapter" within the meaning of 18 U.S.C. § 2520.

113.    The Defendant violated 18 U.S.C. § 2511(1)(a) by intentionally intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept the Plaintiff's electronic communications when the Plaintiff navigated (and attempted to comprehend) the www.olivegarden.com website.

114.    The Defendant violated 18 U.S.C. § 2511(1)(c) by intentionally disclosing, or endeavoring to disclose, to any other person, the contents of the Plaintiff's electronic communications, knowing or having reason to know that the information was obtained through the interception of the Plaintiff's electronic communications.

115.    The Defendant violated 18 U.S.C. § 2511(1)(d) by intentionally using or endeavoring to use, the contents of the Plaintiff's electronic communications, knowing of

---

[14] Implied or otherwise
[15] Implied or otherwise

having reason to know that the information obtained through the interception of the Plaintiff's electronic communications.

116.    The Defendant's intentional interception of these electronic communications was without the Plaintiff's knowledge, consent, or authorization and was undertaken without a facially valid court order or certification.

117.    The Defendant unlawfully accessed and used the contents of the intercepted communications. On information and belief, such use included the enhancement of the Defendant's profitability and revenue.

118.    The Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2520(a) provides a civil cause of action to "any person whose wire, oral, or electronic communications is intercepted, disclosed, or intentionally used" who is in violation of the ECPA.

119.    The Defendant is liable directly and/or vicariously for this cause of action. Plaintiff Andres Gomez therefore seek remedy as provided for by 18 U.S.C. § 2520, including such preliminary and other equitable or declaratory relief as may be appropriate and reasonable attorney's fees and other litigation costs reasonably incurred.

120.    Plaintiff Andres Gomez has additionally suffered loss by reason of these violations, including, without limitation, violation of the right of privacy.

121.    Pursuant to 18 U.S.C. § 2520, Plaintiff Andres Gomez is entitled to preliminary, equitable, and declaratory relief, in addition to statutory damages of the greater of $10,000 or $100 per day for each day of violation, actual and punitive damages, reasonable attorneys' fees, and Defendant's profits obtained from the above described violations. Unless restrained and enjoined, Defendant will continue to commit

such acts. Plaintiff Andres Gomez's remedy at law is not adequate to compensate him for these inflicted and threatened injuries, entitling the Plaintiff to remedy including injunctive relief as provided by 18 U.S.C. § 2510.

## COUNT III – TRESPASS

122.    Plaintiff Andres Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1–86 above.

123.    Plaintiff Gomez's tangible personal property, being his computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant on each and every date that the Plaintiff has accessed Defendant's www.olivegarden.com website.  Plaintiff Gomez's personal information has suffered a trespass due to the employment of software analytics by Defendant which are present on Defendant's www.olivegarden.com website, which the Plaintiff has navigated.

124.    Plaintiff Gomez was unaware of the information gathering by Defendant *Privacy Policy* due to his inability to comprehend Defendant's www.olivegarden.com website.

125.    Plaintiff Gomez did not consent to the gathering of his personal information and browsing history, therefore Defendant has committed a trespass against Plaintiff.

126.    By engaging in the acts of farming the Plaintiff's computer for data using various analytics as alleged in this action without the knowledge, authorization, and/or consent of Plaintiff, Defendant has dispossessed the Plaintiff from use and/or access of his computer (or parts of his computer).  Further, the acts of the Defendant have impaired the use, value and quality of Plaintiff's computer.

127.     The Defendant's acts constituted an intentional interference with the use and enjoyment of the Plaintiff's computer.

128.     By the acts described hereinabove, the Defendant has repeatedly and persistently engaged in trespass of the Plaintiff's personal property in violation of the common law.

129.     The intentional intermeddling with personal property in possession of another which results in the deprivation of the use of the personal property or impairment of the condition, quality, or usefulness of the personal property is prohibited by principles of common law.

130.     Without Plaintiff's consent, or in excess of any consent given, Defendant has knowingly and intentionally accessed Plaintiff's property and caused injury to Plaintiff.

131.     In order to gain access to Plaintiff's computer and personal information, Defendant has engaged in deception and concealment.  Defendant's installation and operation of the Local Shared Objects (LSOs)[16] and execution of browser history sniffing code interfered and/or intermeddled with Plaintiff's computer, including by circumventing their controls designed to prevent the information collection effected by the Defendant. Such use, interference and/or intermeddling was without consent, or in the alternative, in excess of consent.

---

[16] Local shared objects (LSOs), commonly called Flash cookies (due to their similarities with HTTP cookies), are pieces of data that websites which use Adobe Flash may store on a user's computer

132.    Defendant's installation and operation of the LSOs and execution of browser history sniffing code has impaired the condition and value of the Plaintiff's computer.

133.    Defendant's trespass to chattels, nuisance, and interference caused real and substantial damage to the Plaintiff.

134.    As a direct and proximate result of the Defendant's trespass to chattels, nuisance, and interference and unauthorized access of and intermeddling with the Plaintiff's property, the Defendant has injured and impaired on the condition and value of the Plaintiff's computer as follows:

a)    By consuming the resources of an/or degrading the performance of Plaintiff's computer (including space, memory, processing cycles and internet connectivity);

b)    By diminishing the use of, value, speed, capacity, and/or capability of Plaintiff's computer;

c)    By altering and controlling the functioning of Plaintiff's computer;

d)    By devaluing, interfering with, and/or diminishing of Plaintiff's possessory interest in his computer;

e)    By infringing on Plaintiff's right to exclude others from his computer;

f)    By infringing on Plaintiffs right to determine (as owner of his computer) which programs should be installed and operated on his computer;

g)    By compromising the integrity, security, and ownership of Plaintiff's computer; and

h)    By forcing the Plaintiff to expend money time, and resources in order to remove the programs installed on his computer without notice or consent.

135.    For all of the foregoing, the Plaintiff has no adequate remedy at law.

### DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff Andres Gomez hereby demands judgment against Defendant Darden Restaurants Inc. and request the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendant Darden Restaurants Inc. has violated the Plaintiff's rights as guaranteed by the ADA;

b) The Court enter an Order requiring Defendant Darden Restaurants Inc. to update its www.olivegarden.com website to remove barriers in order that individuals with visual disabilities can access the website to the full extent required by Title III of the ADA;

c) The Court enter an Order requiring Defendant Darden Restaurants Inc. to clearly display the universal disabled logo[17] within its website, wherein the logo would lead to a page which would state Darden Restaurants Inc.'s accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of website www.olivegarden.com;

---

[17] 

d) The Court enter an order requiring Defendant Darden Restaurants Inc. to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

e) The Court enter an Order directing Defendant Darden Restaurants Inc. to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendant to undertake and complete corrective procedures to the website known as www.olivegarden.com;

f) The Court enter an Order directing Defendant Darden Restaurants Inc. to establish a policy of web accessibility and accessibility features for the website known as www.olivegarden.com;

g) The Court to declare that Defendant's actions, as set forth above, violate the: (i) Electronic Communications Privacy Act, 18 U.S.C. § 2510; and Florida common law tort of trespass as alleged above;

a)     The Court to declare the *Legal Notices* and *Privacy* sections of the website www.olivegarden.com null and void and rescinded and not applicable to the Plaintiff due to the inaccessibility of the website for visually impaired individuals such as the Plaintiff, who has no means to comprehend said Terms and Conditions;

h) The Court to declare that the privacy rights of the Plaintiff have been violated by the unwarranted and unauthorized software and analytics that have been placed on Plaintiff's computer without his consent;

b)     The Court to award injunctive and equitable relief as applicable, including:

    i.     prohibiting Defendant from engaging in the acts alleged above;

    ii.    requiring Defendant to provide reasonable notice and choice to consumers regarding Defendant's data collection, profiling, merger, and de-anonymization activities;

    iii.   requiring Defendant to disgorge to Plaintiff all of Defendant's ill-gotten gains;

    iv.    requiring Defendant to delete all data from and about Plaintiff that it collected and/or acquired from third parties through the acts alleged above;

    v.     requiring Defendant to provide Plaintiff reasonable means to decline permanent participation in Defendant's collection of data from and about him;

i) The Court award damages (including statutory damages where applicable), in an amount to be determined at trial;

j) The Court to award restitution against the Defendant for all money to which Plaintiff is  entitled in equity;

k) The Court to restrain, by preliminary and permanent injunction, Defendant, its officers, agents, servants, employees, and attorneys, and those participating with them in active concert, from identifying Plaintiff online, whether by personal or pseudonymous identifiers, and from

monitoring, accessing, collecting, transmitting, and merging with data from other sources any information from or about Plaintiff;

l)  The Court to award Plaintiff reasonable litigation expenses and attorneys' fees; pre- and post-judgment interest to the extent allowable; restitution; disgorgement and other equitable relief as the Court deems proper; compensatory damages sustained by Plaintiff; statutory damages, including punitive damages; and permanent injunctive relief prohibiting Defendant from engaging in the conduct and practices complained of herein; and

m) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 17th day of October, 2016.

Respectfully submitted,

*s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*